NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JUN 5 2026

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JOSE ALBERTO VAZQUEZ MACIAS, <br><br> Petitioner, <br><br> v. <br><br> TODD BLANCHE, Acting Attorney General, <br><br> Respondent. | No. 24-5766 <br><br> Agency No. A070-735-365 <br><br> MEMORANDUM* |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted April 14, 2026
Pasadena, California

Before: PAEZ, CALLAHAN, and BUMATAY, Circuit Judges.

Jose Alberto Vazquez Macias ("Vazquez") petitions for review of an order of

the Board of Immigration Appeals dismissing his appeal from an Immigration

Judge's order of removal. He argues that he derived United States citizenship from

his mother, a naturalized citizen, under former 8 U.S.C. § 1432 (1994) ("Section

1432"), *repealed* by Child Citizenship Act of 2000, Pub. L. No. 106-395, § 103(a),

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

114 Stat. 1631, 1632 (2000). Our review is de novo. *Minasyan v. Gonzales*, 401 F.3d 1069, 1074 (9th Cir. 2005). Exercising jurisdiction pursuant to 8 U.S.C. § 1252(b)(5)(A), we hold that Vazquez derived citizenship from his naturalized mother. We therefore grant the petition.

1. Vazquez's parents, Jose Alberto Vazquez Perez and Yolana Macias Mendiola ("Macias"), are Mexican nationals. They were married in the state of Baja California, Mexico. They had their only son, Vazquez, on December 4, 1981, also in Baja California. In 1987, Macias and Vazquez moved to California to join Vazquez's father, who had previously relocated to California. Vazquez's father abandoned the family in Hawaiian Gardens, California, in 1987. Macias has not seen Vazquez's father since.

On April 15, 1996, Macias secured a court order from the First Instance Family Court of Tijuana, Baja California ("Tijuana Court"), authorizing her to "carry out immigration and passport procedures" for Vazquez ("Tijuana Court Order" or "Order"). It provides, in pertinent part:

> Considering that the present case was proven with [] testimony . . . that Mr. JOSE ALBERTO VAZQUEZ PEREZ abandoned the plaintiff, Mrs. YOLANDA MACIAS MENDIOLA, and her youngest son named JOSE ALBERTO VAZQUEZ MACIAS, for approximately nine years, and that the petitioner is the one who has always been responsible for the custody and support of her minor son, with support in article 418 of the civil code in force in the State, the undersigned judge decrees the necessary authorization so that the petitioner can carry out immigration and passport procedures for said minor . . . .

Article 418 of the Baja California Civil Code provides that children may not "leave the home" of their parents without parental permission "or a decree from the competent authority."[1]

Macias became a naturalized citizen on August 16, 1996, when Vazquez was fourteen years old. In 2003, Vazquez's father secured a divorce decree in Baja California. It noted no prior separation of the couple.

2. Vazquez claims derivative citizenship from his mother, who became a naturalized U.S. citizen after his birth. Because his mother naturalized in 1996, his claim to citizenship is governed by former Section 1432. *See, e.g.*, *Giha v. Garland*, 12 F.4th 922, 932 (9th Cir. 2021).

Among the many requirements of Section 1432, only one is at issue here: whether there had been a "legal separation" of Vazquez's parents before he turned eighteen. To demonstrate a "legal separation" of his parents, Vazquez must point to a "court-ordered recognition of the final breakup of [the] marriage."[2] *Minasyan*, 401 F.3d at 1078. The Tijuana Court Order satisfies this requirement.

---

[1] We cite to provisions of the Baja California Civil Code ("Civ. Code Baja Cal.") and the Mexican Federal Civil Code ("Civ. Code"). The English translation of the federal code is available in *Mexican Civil and Commercial Codes* (Abraham Eckstein & Enrique Zepada trs., 1995). A certified English translation of the relevant provisions of the Baja California code was supplied by the parties.

[2] We have twice reserved the question of whether a legal separation requires formal "recognition" by a court. *Minasyan*, 401 F.3d at 1079 n.19; *Giha*, 12 F.4th at 934. Because Vazquez waives any argument that legal separation might not

2.a.   Abandonment in Baja California is a "legal separation" within the meaning of Section 1432.  Marriage in Mexico is premised on the requirement that spouses "reside jointly" in the marital home.  Civ. Code, art. 163; Civ. Code Baja Cal., art. 160.  A couple's marital home is "their residence at the place where by mutual accord they have agreed to live."  Civ. Code, art. 163.  "The unjustified abandonment of the marital home by one of the spouses for more than six months shall terminate, from the date of abandonment, the effects of the marital partnership insofar as they favor that [abandoning] spouse; these effects may not be reinstated except by express agreement."  Civ. Code Baja Cal., art. 193.

Abandonment is sufficiently "final" to constitute a "final breakup of [the] marriage."  *Minasyan*, 401 F.3d at 1078.  Compare abandonment here to the form of legal separation we recognized in *Minasyan*: California's "separation by virtue of law."  401 F.3d at 1078.  Both yield indefinite suspensions of the marital relationship and its benefits unless the couple takes some affirmative action to reverse the separation.  Separation "by virtue of law" looks to the absence of any "present intention" to resume the marriage.  *Id.* (quoting *In re Marriage of Marsden*, 181 Cal. Rptr. 910, 914 (Cal. Ct. App. 1982)).  Abandonment, similarly, ends the benefits of a marriage, which "may not be reinstated except by express agreement."  Civ. Code

---

require formal recognition, we assume without deciding that it is a necessary element here.

Baja Cal., art. 193. And like the legal separation we recognized in *Minasyan*, the abandonment here marked the "final breakup of [the] marriage" as a practical matter. 401 F.3d at 1078. Macias has had no contact with her ex-husband since he left her in 1987.

Abandonment also "entails important legal consequences under [local] law." *Id.* Most significantly, it terminates the default community-property regime. Civ. Code, art. 196; Civ. Code Baja Cal., art. 193. And it results in the forfeiture of prenuptial gifts by the abandoning spouse. Civ. Code Baja Cal., art. 225; Civ. Code, art. 228.

2.b. The Tijuana Court Order constitutes "court-ordered recognition" of abandonment. *Minasyan*, 401 F.3d at 1078. It acknowledged "that Mr. JOSE ALBERTO VAZQUEZ PEREZ abandoned the plaintiff [in the family court decree action], Mrs. YOLANDA MACIAS MENDIOLA, and her youngest son named JOSE ALBERTO VAZQUEZ MACIAS, for approximately nine years." It is immaterial that the Order served the "entirely separate" function of authorizing Macias to initiate immigration proceedings for her son, *id.* at 1079 n.19, and it does not matter that the Order recognized a separation that began long before 1996, *id.* at 1080 n.20.

The government objects that this recognition is insufficient. It argues that the Tijuana Court Order did not expressly mention the marriage or its status. But this

24-5766

assumes that the Tijuana Court used the term "abandoned" colloquially. Given the significance of the legal concept of abandonment in Baja California, that is implausible. We read the Tijuana Court's Order as employing a term of art, which both implied a marriage and addressed its breakdown. That is, one cannot abandon a marital home if one is not married.

The government argues that the Tijuana Court Order does not cite any code provisions relating to divorce or abandonment, or the legal consequences of abandonment. As our opinion in *Minasyan* reflects, that is not necessary. In that case, we granted the petition without noting that the California divorce decree did not cite or discuss any statutes governing separation by virtue of law or its consequences. *See* 401 F.3d at 1073, 1079.

Finally, the government objects that the Tijuana Court did not expressly find that the abandonment was without "good cause" or "justification." But under Baja California law, all abandonment is unjustified unless a court affirmatively "exempt[s]" a spouse from the obligation of living in the marital home. Civ. Code Baja Cal., art. 160. Further, our precedents do not require the court of the governing jurisdiction to use specific terms of art or engage in particular analyses. That is because we afford "strong . . . deference" to the state or foreign government that recognizes the separation, rather than second guess the work of its courts. *Id.* at 1077 (quoting *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992)).

3. The government's remaining arguments dispute the factual premise of Vazquez's claim—whether Vazquez's father in fact abandoned his mother within the meaning of Mexican law. The government points to prior statements from Macias disclaiming a prior separation, her limited purpose in seeking the Tijuana Court Order, the later-issued divorce decree and its failure to mention a prior separation, and facts suggesting that Vazquez's father might have had cause for abandoning Macias. These arguments are not well taken. Abandonment under Baja California law is a legal separation within the meaning of Section 1432, and the Tijuana Court recognized an abandonment. Given the deference we owe the Tijuana Court, *id.*, we decline to second guess its determination.

Vazquez has established that he obtained United States citizenship through his naturalized mother under Section 1432. He therefore is not subject to removal.

**PETITION GRANTED; REMANDED.**[3]

---

[3] The motion to stay removal, Dkt. No. 2, is GRANTED pending issuance of the mandate.